Spalding *v.* Dixon.

HOSEA SPALDING *v.* LEONARD M. DIXON.

Debts against a bankrupt, originating between the time of his filing his petition to be declared a bankrupt and the time of his being decreed a bankrupt by the district court, are proveable under the commission, and are consequently barred by the certificate of discharge.

Where the defendant, on the sixth of June, 1842, which was subsequent to his filing his petition to be declared a bankrupt, executed certain promissory notes to the plaintiff, as part of an arrangement then entered into between them, which notes, with the other papers executed in accordance with the arrangement, were deposited with a third person, to be retained by him until the first of October, 1842, to await the election of the plaintiff as to whether the arrangement should be carried into effect, or be vacated and the papers recalled, and on the eighth of July, 1842, the defendant was decreed a bankrupt by the district court, and on the first of October, 1842, the plaintiff received from the depositary the promissory notes executed by the defendant, together with the other papers, which by the arrangement of June sixth, belonged to him, it was held, that the notes, upon their execution, were binding upon the defendant, subject to be defeated by the plaintiff upon the happening of the contingency contemplated by the arrangement, and that this contingent character of the notes did not, under section five of the bankrupt act, prevent the notes from being proved under the commission, and that the notes were barred by the certificate of discharge subsequently obtained.

Spalding *v.* Dixon.

Assumpsit, to recover the interest due upon several promissory notes, bearing date June 6, 1842. The defendant pleaded the general issue, and also his certificate of discharge in bankruptcy under the act of Congress of 1841. The plaintiff replied, that the notes were not provable under the commission in bankruptcy, and so were not barred. Trial by the court, November Adjourned Term, 1847. —Bennett, J., presiding.

On trial the facts were proved as follows. The defendant filed his petition in bankruptcy in the district court of the United States for Vermont on the twenty sixth day of April, 1842, and was decreed a bankrupt by the court July 8, 1842, and obtained his certifieate of discharge, by decree of the court, January 10, 1843. On the sixth of June, 1842, the plaintiff and defendant, who had previously been copartners, met for the purpose of arranging their affairs. The plaintiff then held three promissory notes against the defendant, all dated June 23, 1841,—one for $982,31, payable July 15, 1841,— one for $1041,92, payable April 15, 1842,— and the other for $1121,37, payable April 15, 1843. And on that day,—June 6, 1842,—the defendant executed to the plaintiff the notes declared upon in this suit, and also procured David A. Smalley and others to execute a bond to the plaintiff, in the penal sum of $5000, conditioned for the payment of certain specified debts due from the then late firm of L. M. Dixon & Co., consisting of the plaintiff and defendant, to different individuals, and also for the payment of all the debts of the firm, not to exceed $4000 in amount. And the defendant also, on the same day, procured Frederic Fletcher to execute a written agreement with the plaintiff, in which it was recited, that the plaintiff had executed to Fletcher a quitclaim deed of certain premises mortgaged to him by the defendant, and that the plaintiff had received the bond above recited, executed by Smalley and others, and providing, that all the papers executed on that day, together with the old notes, held by the plaintiff, should be left in the custody of F. G. Hill until the first day of October, 1842, and that, if the plaintiff, previous to that time, should discover that the debts against the firm exceeded four thousand dollars in amount, he might give notice of that fact to Fletcher, and thereupon all papers executed on the sixth of June, 1842, should be surrendered to the parties executing them, and the arrangement

should cease to have effect, unless Fletcher should elect to assume the payment of the amount of excess of the debts due from the firm over four thousaud dollars; and if Fletcher should so elect, the arrangement should be binding, and the papers be delivered to the parties for whom they were intended. All the papers were accordingly delivered to Hill on the sixth of June, 1842, and on the first of October, 1842, in pursuance of the written contract, he delivered to the plaintiff the bond and the new notes executed by the defendant on the sixth of June, being the notes now in suit, and he delivered to the defendant the old notes executed by him, and the other papers were delivered to the persons to whom they respectively belonged.

Upon these facts the county court rendered judgment for the defendant. Exceptions by plaintiff.

*J. Maeck* and *J. W. Allen* for plaintiff.

1. The certificate relates back to the act of bankruptcy, and is a bar to such debts, and such only, as existed at the time of the act of bankruptcy, which, in this instance, is the filing of the petition. Owen on Bank. 161. *Moss* v. *Smith*, 1 Camp. 489. *Sarratt* v. *Austin*, 4 Taunt. 200. *Malcolm* v. *Fullarton*, 2 T. R. 645. *Crouch* v. *Gridley*, 6 Hill 250. *Thompson* v. *Hewitt*, 6 Hill 254. This results from the doctrine, well established, that the bankrupt's effects pass into the hands of the assignee in bankruptcy from the date of the filing of the petition; and he is permitted, from that time, to enter into business and to hold property,—subject, of course, to the contingency of his receiving a discharge. *In re Grant*, 5 Law Rep. 13. *In re Cheney*, Ib. 23. Even then, if the notes in suit in this case, took effect from their date, they were not proveable under the commission.

2. There is no doubt, but that the debt must have existed at the time of the decree of bankruptcy. *In re Grant*, 5 Law Rep. 13. 5 Law Rep. 398. *Dyer* v. *Cleaveland*, 18 Vt. 241. The notes in this case took effect from their delivery,—which was October 1, 1842. *Woodford et ux.* v. *Dorwin*, 3 Vt. 82. *Lansing* v. *Gaine*, 2 Johns. 300.

3. If the old debt might have been proved, that can have no effect upon the new agreement. Upon the delivery of the new notes the

old debt became extinct; and if the old debt had been proved, the judge, upon the delivery of the new notes, would have expunged the proof. Owen on Bank. 173.

*A. Peck* and *D. A. Smalley* for defendant.

1. The notes were completely executed and delivered and became operative against the defendant on the sixth of June, 1842. The contract shows, that the parties intended the placing of the papers in the hands of Hill as a delivery, subject only to be rescinded, by the first of October, by the plaintiff, at his election, in case the debts should be found to exceed the bond, and Fletcher should not choose to pay the excess. They were not delivered as an *escrow*, to take effect on a contingency, but became operative on delivery to Hill, with a qualified right in the plaintiff to rescind, if a certain fact should be ascertained, which in truth never existed.

2. But even if the notes had been delivered as an *escrow*, to be operative, or not, according to the event contemplated in the agreement, yet as the plaintiff never had the right and never elected to repudiate the notes, but, on the first of October, received them from Hill, the notes had relation back to the first delivery, and, for every legal purpose, are the same, as if the delivery had been perfect on the sixth of June.

3. The construction of the bankrupt act most favorable to the plaintiff, that can be claimed, is, that the certificate bars only debts contracted before the decree of bankruptcy. As the decree, in this case, was made July 8, 1842, upon either view in reference to the delivery of the notes, the notes were proveable and are barred by the certificate. 14 E. C. L. 75. 6 E. C. L. 3. 3 Burr. 1663. 2 Str. 1196. *Ex parte Helm*, 1 Mon. & McA. 70. *Ex parte Haynes*, 1 G. & J. 107. *Ex parte Butterfield*, 1 Rose 192. *Ex parte Poncher*, 1 G. & J. 107. *Bonteflour* v. *Coats*, Cowp. 25. *Aylett* v. *Harford*, 2 W. Bl. 1317.

4. If the notes in suit were contingent until the first of October, 1842, they were proveable in bankruptcy. Act of Congress of 1841, sec. 5. *Jackson* v. *Magee*, 3 Ad. & E., N. S., [43 E. C. L.] 625. *Woolcott* v. *Hall*, 2 Bro. C. R. 241. *Tilley* v. *Lawford*, 4 Scott N. R. 208. *Ex parte Harrison*, 3 M., D. & D. 350, [5 Har. Dig. 178.]

5. .If the new notes were not absolute until the first of October, 1842, still the debt existed. The new notes being given for the old notes, as is admitted by the pleadings, the whole transaction might have been proved, to stand at the amount of the old notes, or the amount of the new notes, according to the event under the contract. The debt was absolute, and subject only to be reduced, on a contingency, the first day of October, 1842. *Ex parte Harrison,* above cited. *Ex parte Broodley,* 2 Man. Dea. & G. 524. *Stedman* v. *Martinnant,* 13 East 427. *Mid. College* v. *Williamson,* 1 Vt. 212. *Kirkpatrick* v. *Tattersall,* 1 Car. & K., [47 E. C. L.] 577.

The opinion of the court was delivered by

KELLOGG, J. The only question raised in this case is, whether the notes in suit are barred by the defendant's certificate of discharge in bankruptcy.

It is urged by the plaintiff, that the certificate relates back to the *time of filing* the petition in bankruptcy, and is only a bar to such debts, as then existed against the bankrupt. If this proposition be admitted, it would necessarily follow, that the certificate would not be a bar to the recovery of the notes in suit; for there is no pretence, that they had any existence anterior to the sixth of June, 1842,—which was subsequent to the filing of the petition in bankruptcy. The act of Congress, providing for the granting of certificates of discharge to bankrupts and prescribing the manner in which they might be obtained, does not, *in terms,* declare the time, to which the certificate shall extend and be a bar to the debts of the bankrupt. It seems to be admitted in the argument, and so are the authorities, that the certificate is a bar to all debts of the bankrupt, (excepting those of a particular character, which are excluded from its operation by the act of Congress,) which were proveable under the commission.

There are some authorities, which appear to countenance the idea, that the operation of the certificate is limited to such debts as existed at the time of the filing of the petition in bankruptcy. Such are the cases of *Crouch* v. *Gridley,* 6 Hill 252, and *Thompson* v. *Hewitt,* 6 Hill 254; and if the *dicta* of the court in those cases are to be regarded as sound, it would seem but reasonable, that the acquisitions of the bankrupt, subsequent to the filing of his petition,

7

should be exempt from the operation of the act and secured to him, to meet his accruing liabilities during the same period. This proposition has been pressed upon the court in the argument, and it was said to have been countenanced by the late Mr. Justice STORY in the cases of *Grant* and of *Cheney.* An examination, however, of the cases of *Grant* and *Cheney,* we think, will hardly warrant that conclusion. But if any such intimations were made by Judge STORY, they are in direct conflict with the third section of the act of Congress; which declares, that all the property, of every name and nature, of every bankrupt, who shall be declared a bankrupt by the proper court, shall, by mere operation of law, *ipso facto*, from the time of such decree, be deemed to be divested out of such bankrupt, and the same shall be vested, by force of the same decree, in his assignee. The language of this section would seem to leave no room to doubt, that all the property of the bankrupt, at the time he was decreed such, *became vested* in the assignee. And such, subsequently, appears to have been the opinion of Judge STORY, when the case of *Newhall, ex parte,* assignee of *Brown,* was before him. Inasmuch, then, as the property acquired by the bankrupt in the interval between the filing of his petition and his being decreed a bankrupt passes to and vests in the assignee for the benefit of his creditors, it is but reasonable, that his *bona fide* debts, contracted during the same period, should share in the fund thus increased by his subsequent acquisitions, and be subject to the operation of his certificate. And such, we believe, to be the true construction of the law, and consequently, that debts originating after the filing of the petition, and which existed at the time he was declared a bankrupt, were proveable under the commission.

The defendant was decreed a bankrupt on the eighth of July, 1842 ; and the inquiry arises, were the notes of the sixth of June, 1842, then debts of the bankrupt and proveable under the commission ? To answer this inquiry, reference must be had to the facts in the case. The notes did not pass, directly upon their execution, to the hands of the plaintiff, but were deposited with a third person, together with the old notes, which formed the consideration of the notes in suit, and the other papers made and forming part of the arrangement of the sixth of June, 1842, there to remain until the first of October following, to await the election of the plaintiff as to

whether the arrangement of the sixth of June should be carried into effect, or vacated, and the papers recalled.   On the first of October, in the event that the written contract was not defeated, or rescinded, according to some of its provisions, but went into effect according to its terms, Hill, the depositary, was to deliver the notes of the sixth of June to the plaintiff, and the old notes to the defendant; and he did so deliver them.   By recurring to the written contract executed by the plaintiff and Fletcher, and deposited in the hands of Hill with the other papers, it appears, that the plaintiff's right to defeat and put an end to the contract between him and Dixon of the sixth of June, 1842, existed only in the event that the outstanding claims against the firm of L. M. Dixon & Co. should be found, when added to those enumerated in the bond of indemnity executed by Smalley, to exceed the sum of $4000,—and not even then, provided Fletcher should elect to become responsible for such excess.   It does not appear, that the *defendant* had any power to defeat the arrangement, or any interest in having the papers deposited with a third person, instead of being delivered to the respective persons in interest at the time of their execution.   The course pursued would seem, therefore, to have been adopted for the sole purpose of enabling the plaintiff to determine, whether he would elect to defeat and vacate the contract and thereby repossess himself of his original securities and restore those which had been substituted for them.

The question still remains, how are the notes in suit to be regarded during the interval between the sixth of June and the first of October following, when they were delivered into the hands of the plaintiff and the old notes were surrendered to the defendant by the depositary?   We think it quite obvious, that, upon the execution of the notes and the deposite of them in the hands of Hill, under the agreement which appears in the case, they became and were valid and binding upon the defendant, and that the interest and property in them then vested in the plaintiff, subject, however, to be defeated by the plaintiff, upon the happening of the contingency before mentioned.   Such we believe to be the fair conclusion to be drawn from the facts presented in the case.   Nor does the contingent character of the notes constitute an objection to their being proved under the commission.   Upon recurring to the fifth section of the act of Congress, it is apparent, that the contingency, to which the notes were

subjected, interposed no obstacle to their proof. It expressly provides for the proving of uncertain and contingent claims.

Inasmuch, then, as these notes might have been proved against the defendant under the commission, we think the county court were right in holding that they were barred by the certificate, and consequently the judgment of that court is affirmed.